## GRAHAM *vs.* COOK ET AL.

[BILL IN EQUITY BY PART OWNER OF STEAMBOAT AGAINST OTHER OWNERS AND
OTHER PERSONS CLAIMING TO BE OWNERS, TO HAVE COMPLAINANT'S INTER-
EST THEREIN DECREED TO COMPLAINANT, FOR ACCOUNT OF PROFITS FOR
USE OF SAME, AND TO ENJOIN SALE OF COMPLAIANNT'S INTEREST BY OTHER
OWNERS, AND FOR GENERAL RELIEF.]

1. *General relief; prayer for, what decree authorizes.*—Under the general
prayer for relief, of a bill in equity, when in the disjunctive the com-
plainant may receive the relief to which his case entitles him, different
from his special prayer, if the defendant will not thereby be surprised.
2. *Part owner of vessel; what interest can sell.*—One part owner of a ves-
sel has no authority to sell more than his own interest.
3. *Hire of boat; when damages by way of, may be properly decreed.*—
Where one part owner of a steamboat sold the entire interest to per-
sons chargeable with notice of the rights of the other owner, which
they and their vendor deny and repudiate, on a bill filed against them
by such owner praying to have her interest established, and an account
of the earnings, the defendants can not complain if her proportion of
the reasonable hire of the boat during its detention be decreed to the
complainant as damages.

APPEAL from the Chancery Court of Mobile.
Heard before Hon. N. W. COCKE.

The record in this case was very large, and imperfectly
bound; parts of it became separated from the portion of
the record that came into the Reporter's hands. The miss-
ing part of the transcript is mainly that part which con-
tains the depositions. It has been impossible, therefore,
to give any fuller report of the facts of the case than ap-
pear in the opinion.

MANNING & WALKER, and BOYLES & OVERALL, for appel-
lant.
DARGAN & TAYLOR, *contra.*

[No briefs came into the Reporter's hands.]

B. F. SAFFOLD, J.—The bill was filed by the appellant on the 3d of July, 1863. Its prayer is, that the court will decree to the complainant her just share of the steamboat *Reindeer*, with its machinery, furniture, &c., and its earnings, enjoin the defendants from disposing of her share thereof, and grant to her such further or other relief as she may be entitled to.

The defendant Cook, and the other defendants Baldwin & Buckley, to whom he sold the boat on the 23d of March, 1863, deny that she had any interest in the said boat, and the last two claim to be *bona fide* purchasers for valuable consideration without notice.

The evidence leaves no doubt of the complainant's part ownership to the extent of a three-eighths interest, and this the chanceller decreed to her. Up to the date of the sale there was no open and express denial of her interest by Cook, and the boat was legitimately employed in its intended business, with him as captain or master. The profits which had accrued to that time seem to have been expended in paying for the construction of the boat, or debts for which Cook and the complainant were equally liable, except a considerable sum of Confederate currency, which was in the possession of the first clerk, Olds. This fund was retained by Olds, against the wishes of Cook, but on account of his claim to be the sole owner of the boat, at the request of the complainant, and on account of an eighth interest in the boat which he himself claimed, until it became worthless. For this portion of the profits the chancellor decided that there should be no liability, because it was lost as much by the fault of one party as the other. We think he was right. There had been at that time no conversion by Cook of either the boat or the money, and no wrong done by him except his mere claim of sole ownership, which, without the possession or control of the money, could impose no liability upon him.

The sale made by him of the entire interest in the boat was a conversion of the complainant's interest, both by him and the defendants to whom he sold, unless the latter may

Graham v. Cook et al.

escape on their plea of innocent purchase. During the possession of Baldwin & Buckley no actual net earnings realized were proved. And on this account, on the special prayer of the bill, the complainant recovered nothing except her three-eighths share of the boat, which from time and use had greatly depreciated. She insists that under her general prayer she ought to recover what the boat might reasonably have been hired for during the time her part ownership was denied, while the defendants urge that this would be such a departure from the special relief asked as is not justified by the practice of the court. We will first consider this issue on the presumption of a tortious conversion by all of the defendants.

There is no doubt that under the general prayer, other relief agreeable to the case made by the bill may be granted than that which is particularly prayed for.—*English v. Foxall*, 2 Peters, 598–611. In *Heirn v. Mill*, (13 Vesey, 119,) Lord Eldon held that "charges in the bill putting facts in issue that are material, entitle the plaintiff to the relief which these facts will sustain under the general prayer. But he can not desert specific relief prayed, and under the general prayer ask relief of another description, unless the facts and circumstances charged by the bill will, consistently with the rules of the court, maintain that relief." Under the general prayer the court will not suffer a defendant to be taken by surprise, and permit a plaintiff to neglect and pass over the prayer he has made, and take another decree, even though it be according to the case made by the bill.—1 Dan. Chan. Prac. 449–450. Thus, where a bill was filed by a person in the character of mortgagee praying a sale under a trust to which it appeared he was not entitled, the court would not permit him, under the general prayer, to take a decree that the defendant might redeem or be foreclosed, although it was the relief which properly belonged to his case.—*Parks v. Clinton*, 12 Vesey, 48. In this case the master of the rolls expressed his willingness to suffer the prayer to be changed, though he would not allow the bill to be amended generally. He finally allowed

the plaintiff to amend by adding parties, and praying such relief as he might be advised.

The relief which the court can grant under a general prayer depends to some extent upon its form. Where the complainant is in doubt whether the facts entitle him to the specific relief prayed, or to relief in some other form, his prayer concluding for general relief, should be in the disjunctive. A prayer for *such further relief*, &c., provides for the extension of the particular relief, adding to it, but consistent with it, and should therefore be in the conjunctive.—*Colton v. Ross*, 2 Paige, 396; *Kendall v. Becket*, 2 Russ. & Mylne, 88; 1 Hoff. Chan. Prac. 49. The usual form of the general prayer is for "such further and other relief in the premises, as the nature of his case shall require, &c." Story's Eq. Pl. § 40, note. In this case the general prayer is for "such further or other relief," &c. From the foregoing may be safely drawn the following proposition: Under the general prayer, when in the disjunctive, the complainant may receive the relief to which his case entitles him, different from his special prayer, if the defendant will not thereby be surprised.

There is no doubt that the complainant might have maintained trover against Baldwin & Buckley for the conversion of her share, if she did not aid in deceiving them as to her interest, as was the case in the *Calais Steamboat Company v. Peel*, 2 Black. S. C. R. 372. She might probably have done so against Cook, though it is not so clear that the sale of the entire ship by one part owner will entitle the others to maintain an action of trover against him.—*Wilson v. Reed*, 3 Johns. R. 175; *Bloxam v. Hubbard*, 5 East, 407; *Heath v. Hubbard*, 4 East, 107. Inasmuch as the complainant had altogether, or so nearly, this remedy at law, and preferred to go into equity for a different relief, there is no authority for a decree of the value of her share, and interest from the time of its conversion.

Cook had no authority to sell the complainant's interest. The presumption is, that they were part owners and not partners. It is so charged in the bill, and the defendants

Graham v. Cook et al.

deny that she had any interest.—3 Kent's Com. 153. His sale, however, transferred his own interest, and thereby the other defendants became owners. If this sale had been made without the denial of the complainant's right, she would have been entitled to her action of account, and to the decree which was rendered. Is this the full extent of the relief which she should have under the bill, answers and proof?

The evidence abundantly sustains the decision of the chancellor, that she was a part owner of the vessel to the extent of three-eighths. Cook had knowledge of whatever interest she possessed. In respect to the other defendants, Ragland, who, as the agent of Cook, made the sale, testifies that it was consummated on the 16th of March, 1863, that the money was not to be paid until the boat was delivered, which was done on the 23d of March. He is not certain whether the money was paid to him on the 23d or 24th of March. Goodall and Snow testify that notice of the complainant's interest was given to Baldwin & Buckley by them on the 21st of March, and Goodall says Baldwin would not receive a copy from him. The complainant's claim was registered in the probate court office on the 23d of March. The muniments of title possessed by Cook were certain bills of sale given to him by the builders, and temporary enrollments in his name, in the custom-house at Cincinnati and Mobile, all of which were so framed at his own instance, without any authority from the complainant. In the same package with the enrollment at Mobile the complainant caused a notice of her claim to be placed, which is dated January 12th, 1863, and which Colson swears was filed shortly after that date, though he says it might have been one, two, or three months afterwards. The probability, from all the circumstances, is that it was prior to the service of the personal notice on Baldwin & Buckley. From this evidence it is plain that these defendants were not purchasers without notice from one whom the complainant had enabled to deceive them.

If the cause could have been determined within a rea-

sonable time after the bill was filed, the special relief prayed would probably have been sufficient, but several years have elapsed, during which the profits accrued under Cook's management have been wholly lost, the value of the boat so greatly depreciated as to be almost worthless, and the complainant deprived of the privilege of selling her interest, or influencing in any way the disposition and employment of the boat. Those who usurped absolute control of the vessel are able to make no accurate statement of its earnings, but claim that large amounts beyond expenses, for which they regularly received vouchers from the Confederate government, have since become valueless. They do not show that the complainant could not have made any use of her share of them, if it had had been promptly assigned to her. Under these circumstances, shall she be held to such relief only as she would have been entitled to if no wrong had been done her; or shall she be decreed, under her general prayer, such hire as the boat would have been reasonably worth, as damages for the detention of her interest, against all of the defendants. We think the latter is demanded by justice and equity.

The judgment is reversed, and the cause remanded.

NOTE BY REPORTER.—The foregoing opinion was delivered at the June term, 1871, and at a subsequent day of the term, both appellee and appellant applied for a rehearing. The arguments in support of the respective applications did not come into the Reporter's hands. The following response was made:

SAFFOLD, J.—The decree was reversed on the ground that the appellant might have relief different from that which she specially asked. The matters of account were obscured by the other issue in the argument before this court, and we do not think it would be just to attempt to do what the chancery court is so much more capable of doing.

We decline to make the amendment asked.

The appellees also ask a rehearing. The grounds stated in the application were considered in making our decision. The fact that their greater interest in the boat would have given them control of it any how is not an answer to their denial of the appellant's right altogether. Their assumption of entire ownership precluded any influence by her in the employment of the vessel; it deprived her of the privilege of selling her interest, or of making any disposition of the profits to which she was entitled.

A rehearing is denied.